UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASYMMETRX, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   CIVIL ACTION NO: 07-11189-RGS |
| BIOCARE MEDICAL LLC, | )<br>) |
| Defendant. | )<br>) |

## ANSWER AND COUNTERCLAIM OF DEFENDANT, BIOCARE MEDICAL LLC, TO AMENDED COMPLAINT

Defendant, Biocare Medical LLC ("Biocare"), by and through its undersigned counsel, hereby responds to the Amended Complaint and Jury Demand of Plaintiffs, AsymmetRx, Inc. and the President and Fellows of Harvard College ("AsymmetRx" and "Harvard"), in accordance with their numbered paragraphs as follows:

### THE PARTIES

1. Without knowledge. (As used herein, the phrase "without knowledge" shall mean that Biocare is without sufficient knowledge or information necessary to form a belief as to the truth of the allegation, and Biocare therefore denies same.)

2. Without knowledge.

3. Admitted.

4. Admitted, on information and belief only. Biocare is without knowledge as to the circumstances or details of the "settlements" alleged, and Biocare states further that those settlements and Defendants have nothing to do with the instant case.

## JURISDICTION AND VENUE

5.      No answer required. (As used herein, the phrase "no answer required" shall mean that the allegation or paragraph contains conclusions of law and/or prayers for relief and not averments of fact as to which an admission or denial is required.  To the extent that such allegation or paragraph shall be deemed to allege actionable behavior or wrongdoing by or against Biocare, it is denied.)

6.      No answer required.

7.      No answer required.

8.      No answer required.

## BACKGROUND FACTS

9.      Without knowledge.  Further answering, Biocare denies that AsymmetRx holds the exclusive license alleged herein.

10.     Admitted, on information and belief.

11.     Denied.

12.     As this paragraph purports to characterize the terms of a document, Biocare refers this Court to the document itself and not to AsymmetRx's characterization of it.  Biocare expressly denies any characterizations by AsymmetRx of the patent referenced herein.

13.     As this paragraph purports to characterize the terms of a document, Biocare refers this Court to the document itself and not to AsymmetRx's characterization of it.  Biocare expressly denies any characterizations by AsymmetRx of the patent referenced herein.

## COUNT I
## Biocare's Infringement of the '256 and '227 Patents

14.     Biocare hereby realleges and incorporates by reference its responses to paragraphs 1-13

above.

15. Denied. Further answering, Biocare states that its license from Harvard is not limited, and not for research use only.

16. No answer required. To the extent that an answer is required, Biocare states that as this paragraph purports to characterize the terms of documents, Biocare refers this Court to the documents themselves and not to AsymmetRx's characterization of them. Biocare expressly denies any characterizations by AsymmetRx of its license, or the patent alleged herein, inconsistent with the terms contained in them.

17. No answer required. To the extent that an answer is required, Biocare states that as this paragraph purports to characterize the terms of documents, Biocare refers this Court to the documents themselves and not to AsymmetRx's characterization of them. Biocare expressly denies any characterizations by AsymmetRx of its license, or the patent alleged herein, inconsistent with the terms contained in them.

18. No answer required.

19. No answer required.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Plaintiffs have failed to state a claim upon which relief may be granted.

### Second Affirmative Defense

The Plaintiffs' claims must be dismissed as this Court lacks subject matter and personal jurisdiction over Biocare.

### Third Affirmative Defense

The Plaintiffs' claims fail because Biocare has an express, unlimited license.

### Fourth Affirmative Defense

The Plaintiffs' claims fail because Biocare has, at minimum, an implied license by virtue of its continued use over a prior five year time period, for which it has made royalty payments to the owner/assignee, Harvard.

### Fifth Affirmative Defense

The Plaintiffs' claims fail because the patents upon which it relies are invalid and fail to comply with the provisions of patent law.

### Sixth Affirmative Defense

The Plaintiffs' claims fail because Biocare's actions and conduct are non-infringing.

### Seventh Affirmative Defense

The Plaintiffs' claims fail by virtue of its own bad faith, and unfair and deceptive acts and practices.

### Eighth Affirmative Defense

The Plaintiffs' claims fail because there is no infringement in fact and/or Biocare's activities do not fall within the patent claims.

### Ninth Affirmative Defense

The Plaintiffs' claims are barred by the applicable statutes of limitation.

### Tenth Affirmative Defense

The Plaintiffs' claims are barred because of its own inequitable conduct, including misuse of the subject patents and its own unclean hands.

Eleventh Affirmative Defense

AsymmetRx's claims are barred because AsymmetRx is not the real party-in-interest and lacks standing to assert claims against Biocare. Harvard's claims are barred because it has not alleged that it has suffered damage or been harmed.

Twelfth Affirmative Defense

The Plaintiffs' claims are barred due to a lack of mutuality of obligation.

Thirteenth Affirmative Defense

The Plaintiffs' claims are barred by the doctrine of laches.

Fourteenth Affirmative Defense

The Plaintiffs' claims are barred due to non-occurrence of a condition precedent.

Fifteenth Affirmative Defense

The Plaintiffs' claims are barred by the waiver and election of remedies doctrines.

Sixteenth Affirmative Defense

The Plaintiffs' damage, if any, was caused in whole or in part by its own acts or omissions or by those of non-parties over which Biocare has had no control.

Seventeenth Affirmative Defense

The Plaintiffs' claims are barred by the doctrine of estoppel.

**WHEREFORE,** Biocare Medical LLC respectfully requests that this Court enter judgment or dismissal in its favor and, pursuant to 35 U.S.C. § 285, award it costs of suit and reasonable attorney's fees for AsymmetRx, and now Harvard, maintaining this lawsuit in bad faith.

## **COUNTERCLAIM**

The Defendant, Biocare Medical LLC ("Biocare"), hereby asserts the following Counterclaim in accordance with F.R.Civ.P. Rule 13.

### Parties and Jurisdiction

1. The Defendant and Plaintiff-in-Counterclaim, Biocare, is a limited liability company duly organized and existing under the laws of California with its principal place of business located at 4040 Pike Lane, Concord, California.

2. The Defendant-in-Counterclaim, AsymmetRx, Inc. ("AsymmetRx") is, upon information and belief, a corporation having its principal place of business located at Klaradies Village Center, Suite 235, Seymour, Connecticut.

3. The Defendant-in-Counterclaim, The President and Fellows of Harvard College ("Harvard") is, upon information and belief, a non-profit educational institution headquartered at 17 Quincy Street, Cambridge, Massachusetts.

4. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1332 and 1367(a).

### Facts

5. Biocare is a Life Science Company that supports the immunohistochemistry and antigen retrieval needs for clinical and research markets. Founded in 1997, Biocare offers HIER instruments and equipment based on pressure cooker technology, and it supplies innovative products for immunohistochemical testing which include cocktail antibodies and biotin free polymer detection kits for single and multiple staining.

6. Harvard is the owner of certain biological materials and know-how related to hybridoma cell lines producing monoclonal antibodies known as the anti-p63 monoclonal antibody (the "p63 antibodies" or the "biological material"). As noted by AsymmetRx and Harvard in their Amended Complaint (¶10), Harvard owns the '256 and '227 patents covering the p63 antibodies.

7.   In May, 2002, Biocare sought to purchase a non-exclusive licensing agreement for the commercial and scientific use of a clone containing this biological material, and the rights for the sale and distribution of antibody products from the clone, with royalties.

8.   From May, 2002 through September, 2002, Biocare negotiated the terms of a license agreement for this biological material with Dr. Henry R. Oettinger from The Office of Technology Transfer & Industry Sponsored Research for Harvard Medical School.  In pertinent part, those terms would include a one-time license royalty fee; percentage royalty payments of a given calendar-year's net sales of any licensed products; and, notably, the scope of the license, including any limitations on use.

9.   As part of their negotiation, the initial, draft license proposed by Harvard was for "research use only" for this biological material.  Biocare, in turn, advised that it would not be interested in the license if it contained any such limitation.

10.   Following negotiation on the scope of the license and certain other terms, the parties entered into a Biological Materials License Agreement, signed and delivered by Susanne Churchill, Ph.D., Associate Dean for Research (the "License Agreement").

11.   Section 2.1 of the agreement, related to the scope of the license grant, states:

> HARVARD hereby grants to LICENSEE and LICENSEE accepts, subject to the terms and conditions hereof a worldwide non-exclusive license to use BIOLOGICAL MATERIALS to research, develop, make and use HYBRIDOMAS and to make, use and sell LICENSED PRODUCTS.

The initial draft of the agreement included words following this sentence limiting Biocare's use to the research market only.  As a result of their negotiation, however, the License Agreement was revised <u>to delete</u> any such limitation.

12.   The '256 and '227 patents-at-issue in this case were pending applications, not disclosed

to Biocare during the time it was negotiating its license from May to September 2002, and only subsequently issued to Harvard, by assignment, in September 2005 and April 2006 - - over three years later.

13. In September, 2003, nearly one year following execution of the License Agreement, the inventors of p63 (founders of AsymmetRx) wrote to the Director of the Office of Technology Licensing ("OTL") for Harvard Medical School complaining of Dr. Oettinger's involvement and lobbying for his removal from any further negotiations of their own. Chief among their complaints was their disagreement over his management of the intellectual property, the p63; his negotiation of the Biocare License Agreement; and, his proposed offer to sell licenses to an additional 18 vendors.

14. Following their complaint to the Director, as a result of pressure received by them and OTL, Harvard's Dr. Oettinger attempted to persuade Biocare that the negotiation over the field of use was really a "clerical error," such that the License Agreement should have included the research use limitation after all. Despite having negotiated terms, and having exchanged draft agreements, and further despite Dr. Oettinger and Dr. Churchill having accepted the terms of the agreement on behalf of Harvard, Harvard attempted to have Biocare execute an amendment to the agreement restricting its field of use.

15. Upset by Harvard's tactics and pressure to execute an amendment to the agreement, Biocare declined and reminded Harvard that the parties negotiated and signed a License Agreement that specifically did <u>not</u> limit Biocare's field of use. Shortly thereafter, Harvard issued an apology to Biocare explaining that they were just trying to get Biocare to change its mind. Indeed, Harvard was negotiating an exclusive license with AsymmetRx covering the same biological material.

16. In November, 2004, Maria McKeon, President & General Counsel of AsymmetRx ("McKeon"), wrote to Biocare demanding that it "immediately cease and desist all sales of the p63 antibody [and] communicate with all customers that the antibody is no longer available as a diagnostic and direct them to AsymmetRx, Inc. for future purchases." In her correspondence, McKeon disclosed that AsymmetRx had obtained an exclusive license to the p63 antibody for all diagnostics [after Biocare had obtained its own license].

17. Biocare immediately responded to McKeon explaining that their agreement with Harvard in 2002 did not limit their field of use. Gene J. Castagnini, COO, CFO & Managing Member of Biocare explained to McKeon:

> Please note that our company has spent excessive time, money and efforts in promoting the use of p63. We have been working with opinion leaders, research centers, labs, hospitals, universities, etc. across the world. We have conducted seminars; collaborated with others in studies, articles and publications, etc. Our VP of R&D, Dr. David Tacha and his staff have actively promoted p63 and developed products to better improve patient testing. We would not have gone through this extensive expense and effort if we thought our license was for research market only.

18. AsymmetRx and Harvard proceeded to develop a strategy to defeat Biocare's interest under its license agreement. AsymmetRx and Harvard met to discuss and devise ways to find Biocare to be in breach of their license in ways other than selling the antibody outside the field, e.g., insurance obligations or though an audit. Harvard and AsymmetRx agreed that they could not "attack every issue at once and that it is better to walk away from [their] meeting with a plan of action on a few items, make progress on those and then meet again later to work on other issues still outstanding.

19. Biocare's License Agreement with Harvard has still not been terminated, and remains in full force and affect. From Biocare's correspondence with AsymmetRx in November, 2004

9

through the filing of its Complaint in June 2007, there have been no further discussions or demands from either Harvard or AsymmetRx on the scope or limitations of the license, or any of Biocare's other rights and obligations under the license. Nearly three years later, and five years since having obtained its license with Harvard, AsymmetRx filed its lawsuit against Biocare, and others, alleging infringement of patents owned by Harvard.

20. Pursuant to Section 7.4 of the Biocare's License Agreement, Harvard is duty bound to cooperate with Biocare's defense of this action by, inter alia, making available to it Harvard employees, agents and representatives to provide information and testimony in Biocare's behalf, and to share all relevant records and documentation which may be used to support Biocare's defense. Biocare's obligation to pay royalties to Harvard is reduced by 50% while such actions are ongoing, and until such time as Biocare receives a release as to any claim of infringement. Under Section 7.4, Biocare's entitlement to a reduction in royalties dates back to AsymmetRx's original filing date, or June 27, 2007.

<u>COUNT I</u>
(Declaratory Judgment – Noninfringement)

21. Biocare hereby realleges and incorporates by reference the allegations contained in paragraphs 1- 20 of its Counterclaim.

22. As set forth in its Amended Complaint, AsymmetRx has alleged that Biocare has infringed upon two patents that Harvard owns, and that AsymmetRx is the exclusive licensee of these patents in the commercial diagnostic field.

23. AsymmetRx has alleged that Biocare's license is limited to research use only. AsymmetRx has further alleged that Biocare is infringing upon the '256 and '227 Patents owned by Harvard and upon AsymmetRx's "exclusive" license.

24.     Biocare obtained a non-exclusive license "to use Biological Materials and Know-How, and to develop, manufacture, use and sell in the commercial market the products made in accordance therewith." Under Biocare's License, "Biological Materials" is defined, in pertinent part, as "the materials and Know-How supplied by Harvard to [Biocare]"; and, "Know-How" is defined as "all information, methods, processes, techniques and data, whether or not patentable, which are disclosed to [Biocare] by Harvard hereunder and which relate to the Biological Materials." No patents relating to the biological materials were ever disclosed to Biocare because none existed at the time Harvard entered the License with Biocare.

25.     Section 2.5 of the Biocare License provides "[t]he License granted by this Agreement does not include a license under any U.S. or foreign patents". It is Biocare's position that Section 2.5 means that no license is being granted to patents <u>then in existence</u>. Section 2.5 does not state or even imply that a license is not being granted to "after-acquired" patents, or those issued "subsequent hereto" or "later-in-time". Biocare's License with Harvard specifically allows Biocare to use "biological materials to research, develop, make and use hybridomas and to make, use and <u>sell</u> licensed products" - - not an invention covered by any patent, pending or otherwise. Conversely, AsymmetRx's License with Harvard granted AsymmetRx a license to practice the invention covered by the <u>existing patents</u> and a license to use biological materials.

26.     Nowhere in the Biocare License is there a provision stating that Biocare's right to use and sell the biological material terminates upon the issuance of related patents. To suggest otherwise would deprive Biocare of its continuing rights under the License and derogate from the intentions of Biocare and Harvard at the time of their negotiation and execution.

27.     Accordingly, Biocare requests that this Court declare the rights, interest and obligations of Biocare and AsymmetRx in the biological material covered by their licenses, declaring (1)

11

that Biocare has a valid and enforceable non-exclusive, and non-limited license, to the biological material covered by the patents; (2) that Biocare has an implied license under the '256 and '227 Patents; and, (3) that by virtue of Biocare's non-limited license and/or its implied license to the after-acquired patents, Biocare has not infringed upon AsymmetRx's license agreement or the patents themselves. Pursuant to 35 U.S.C. § 285, Biocare requests that this Court grant to it Biocare's reasonable attorney's fees and costs for having to defend this action.

## COUNT II
(Interference with Advantageous Contractual/Business Relations)

28. Biocare hereby realleges and incorporates by reference the allegations contained in paragraphs 1-27 of its Counterclaim.

29. As set forth above, Biocare has spent excessive time, money and effort in promoting the use of p63 and developing products to better improve patient testing. Biocare expended such time and resource in order to build valuable business relationships and goodwill with third-parties and contracting parties.

30. Since at least November, 2004, AsymmetRx was aware that Biocare was developing such valuable business relationships.

31. AsymmetRx has exerted undue pressure and has filed this lawsuit in order to unfairly compete with Biocare and to interfere with Biocare's valuable business relationships going forward.

32. AsymmetRx and Harvard have conspired in ways to defeat Biocare's interests.

33. AsymmetRx issued a cease and desist demand and has now filed this lawsuit with the intent to cause damage to Biocare's business, to disrupt and to interfere with the aforesaid business relations, and done without justifiable cause.

34. As a direct result of AsymmetRx and Harvard's actions and conduct amounting to interference with Biocare's advantageous business and contractual relations, Biocare has and will incur damage for which AsymmetRx and Harvard are liable, and it will continue to suffer damages. Biocare does not have an adequate remedy at law.

COUNT III

(Violation of Massachusetts Consumer Protection Act – M.G.L. c.93A)

35. Biocare hereby realleges and incorporates by reference the allegations contained in paragraphs 1-34 of its Counterclaim.

36. AsymmetRx and Harvard are engaged in trade or commerce in the Commonwealth of Massachusetts so as to come within the purview of Massachusetts General Laws, Chapter 93A.

37. AsymmetRx and Harvard's conduct, set forth above, constitute willful and knowing violations of Massachusetts General Laws, Chapter 93A. Those violations include, without limitation (i) pressuring Biocare by itself and with the aid of Harvard, to restrict its use of the biological material covered by the patents, despite having a valid and enforceable non-limited license; and, (ii) filing this lawsuit in bad faith, despite having knowledge of Biocare's non-limited license, to accomplish this same purpose. AsymmetRx's conduct has been unduly and unfairly competitive, given the extraordinary time, money and effort that Biocare has expended to promote the use of p63 and to develop products to better improve patient testing. As set forth above, Harvard has aided in that conduct.

38. Since having been on notice as far back as November, 2004, if not before, AsymmetRx allowed nearly three (3) years to pass, at great expense to Biocare, before filing the instant litigation. AsymmetRx filed its lawsuit with improper motive and purpose - - to gain an unfair competitive advantage over Biocare. Through colluding behavior set forth above, Harvard has aided and abetted AsymmetRx's conduct.

13

39.     By the above-stated conduct, AsymmetRx and Harvard have engaged in unfair and deceptive acts or practices in violation of M.G.L. c. 93A, § 11, and the unfair and deceptive acts or practices by them have been committed intentionally and/or recklessly.

40.     As a direct result thereof, Biocare has suffered, and will continue to suffer damage, thus entitling it to three times the actual damages that AsymmetRx and Harvard have caused it to incur, plus interest, costs and reasonable attorney's fees.

**WHEREFORE**, the Defendant and Plaintiff-in-Counterclaim, Biocare Medical LLC, requests that this Court grant the following relief:

1.      Pursuant to Count I, a declaratory judgment declaring the rights, interests and obligations of Biocare and AsymmetRx in the biological material covered by their licenses, declaring (1) that Biocare has a valid and enforceable non-exclusive, and non-limited license, to the biological material covered by the patents; (2) that Biocare has an implied license under the '256 and '227 Patents; and, (3) that by virtue of Biocare's non-limited license and/or its implied license to the after-acquired patents, Biocare has not infringed upon AsymmetRx's license agreement or the patents themselves.  Pursuant to 35 U.S.C. § 285, Biocare requests that this Court grant to it Biocare's reasonable attorney's fees and costs for having to defend this action;

2.      Pursuant to Count II, judgment against AsymmetRx and Harvard for the damages they have caused Biocare to incur, to be determined at trial, plus interest, costs and reasonable attorney's fees;

3.      Pursuant to Count III, judgment against AsymmetRx and Harvard for treble the amount of damages they have caused Biocare to incur, plus interest, costs and attorney's fees as provided by M.G.L. c. 93A; and,

4.      Any such other and further relief as this Court deems just and equitable.

THE DEFENDANT-IN-COUNTERCLAIM HEREBY CLAIMS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

**BIOCARE MEDICAL LLC,**

By its Attorneys,

Dated: November 10, 2010

/s/ *Douglas B. Otto*
Douglas B. Otto (BBO# 555269)
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Tel: (617) 737-8873
Fax: (617) 342-4970
dotto@morrisonmahoney.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ASYMMETRX, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO: 07-11189-RGS |
| BIOCARE MEDICAL LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

**CERTIFICATE OF SERVICE**

      The undersigned understands that the following counsel of record are registered on the Court's CM/ECF database.  As a result, these individuals (1) will receive from the Court electronic notification of the filing of the <u>Answer and Counterclaim of Defendant, Biocare Medical LLC</u>, filed via ECF on November 10, 2010; (2) have access to this document through the Court's website; and (3) will not receive paper copies of the foregoing from the undersigned upon filing.

Steven M Bauer  
Amy Crafts  
Jamie Crystal-Lowry  
PROSKAUER ROSE LLP  
One International Place  
Boston, MA  02110

Daryl L. Wiesen  
GOODWIN PROCTOR LLP  
53 State Street  
Boston, MA 02109

                                               /s/ *Douglas B. Otto*  
                                               Douglas B. Otto