UNITED STATES DISTRICT COURT
IN THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASYMMETRX, INC., and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>*Plaintiffs,*<br><br>v.<br><br>BIOCARE MEDICAL LLC ,<br><br>*Defendant.* | Civil Action No:  1:07-cv-11189-RGS |

**MEMORANDUM OF LAW IN SUPPORT OF HARVARD'S
PARTIALLY ASSENTED-TO MOTION TO STAY AND COMPEL ARBITRATION**

Plaintiff President and Fellows of Harvard College ("Harvard") hereby submits this Memorandum of Law in support of its Motion to Compel Arbitration.  As Harvard informed this Court in its response to AsymmetRx, Inc.'s Motion for Leave to Amend Complaint to Join Harvard as a Required Party Plaintiff, the disputes in the above-captioned matter are subject to the mandatory arbitration provision in the Biological Materials License Agreement between Harvard and Defendant Biocare Medical LLC ("Biocare") (the "Biocare License Agreement"), as the determination of this case hinges on the interpretation of the Biocare License Agreement. *See* Biocare License Agreement, Section 7.11, attached hereto as Exhibit A.  Resolution of these disputes will also require consideration of the license agreement between Harvard and AsymmetRx, Inc. ("AsymmetRx"), which similarly contains an arbitration provision. Accordingly, the parties must be compelled to arbitration, and this case must be stayed pending the resolution of the arbitration proceedings.

## BACKGROUND

This case concerns Biocare's infringement of patents covering p63 specific antibodies and the use of p63 antibodies to diagnose prostate and other cancers, which patents are owned by Harvard and exclusively licensed to AsymmetRx. AsymmetRx initially brought this action against Biocare and several other defendants, and after the other defendants had settled with AsymmetRx, this Court granted summary judgment to Biocare. On appeal, the Federal Circuit vacated and remanded, "conclud[ing] that AsymmetRx does not have statutory standing to pursue this action absent the participation of the President and Fellows of Harvard College ("Harvard")."

Upon remand, AsymmetRx moved for leave to amend the complaint and add Harvard as a required party plaintiff, on the grounds that the Federal Circuit's decision required Harvard to be joined in order to permit resolution of this case. On October 19, 2010, this Court granted AsymmetRx's motion, and on October 20, 2010, an Amended Complaint was filed. Biocare filed its answer on November 10, 2010, asserting, as its Third Affirmative Defense, the Biocare License Agreement.

Harvard now moves to compel arbitration of this case and to stay these proceedings pending resolution of the arbitration, as the disputes between the parties are subject to the mandatory arbitration provision in the License Agreement between Harvard and Biocare. Harvard and AsymmetRx are also parties to a license agreement containing an arbitration provision (the "AsymmetRx License Agreement"), and resolution of the disputes in this case will also require consideration and interpretation of that agreement. AsymmetRx has assented to this motion to compel. Biocare, however, has not, despite its full knowledge and awareness that the Biocare License Agreement requires arbitration of the disputes in this case. Accordingly,

Harvard respectfully requests that this Court order that the parties submit to a three-party arbitration, and issue a stay of these proceedings pending the completion of the arbitration.

## ARGUMENT

The disputes between the parties in this case must be compelled to arbitration because they are subject to a valid and enforceable arbitration agreement. There is a strong federal policy in favor of enforcing arbitration agreements, which "overwhelmingly favors arbitration – even in the context of patent licensing disputes." *Amgen, Inc. v. F. Hoffman-Laroche Ltd.*, 456 F. Supp. 2d 267, 284 (D. Mass 2006) (Young, J.) (citing *Moses H. Cone*, 460 U.S. at 24-25 and *In re Powertex, Inc.*, 14 F.3d 612 (Fed. Cir. 1993) (unpublished table decision)); *see also Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 n. 14 (1985) (Federal Arbitration Act is "designed to overcome an anachronistic judicial hostility to agreements to arbitrate …."). Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "a written provision in… a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Furthermore, §4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement."

Here, the Biocare License Agreement contains a valid and enforceable arbitration provision, which clearly mandates arbitration of the disputes in this case. Section 7.11 of the Biocare License Agreement provides that "any controversy or claim arising out of or relating to any provision of this Agreement or the breach thereof…<u>shall</u> be settled through arbitration

3

conducted in accordance with the rules of the American Arbitration Association." *See* Biocare License Agreement (emphasis added), attached hereto as Exhibit A. This language is unmistakably clear – any disputes "arising out of or relating" the Biocare License Agreement and its provisions are subject to mandatory arbitration. *See Laughton v. CGI Techs. & Solutions, Inc.*, 602 F.Supp.2d 262, 265 (D. Mass. 2009) (an antecedent "shall" in arbitration provision entitled aggrieved party to mandatory arbitration); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 16 (1st Cir. 2010) (finding the word "shall" denoted an obligation to arbitrate).

Although this case, on its face, involves a claim for patent infringement rather than breach of the License Agreement, it ultimately turns on the interpretation of certain provisions of the Biocare License Agreement. Accordingly, it falls squarely within the scope of the arbitration provision in that Agreement. Biocare has asserted the Biocare License Agreement as its Third Affirmative Defense to the Amended Complaint. When Biocare had argued, earlier in this case, that its sale of p63 antibodies in the commercial diagnostic field was permitted by the Biocare License Agreement, AsymmetRx, in response, had countered that the Biocare License Agreement was not a patent license and did not permit Biocare to sell antibodies in the commercial diagnostic field. Harvard and AsymmetRx anticipate responding in similar fashion to Biocare's assertion of a licensing defense to the Amended Complaint. As this Court observed in its order on AsymmetRx's and Biocare's cross-motions for summary judgment, the "issue [in this case] is the interpretation of a [] License Agreement between Biocare and Harvard." *See* Memorandum and Order on Cross-Motions for Summary Judgment, dated September 29, 2008, at 1. Indeed, the bulk of this Court's order granting summary judgment to Biocare was devoted to an analysis of that agreement. *See* Memorandum and Order on Cross-Motions for Summary Judgment, dated September 29, 2008, at 2-13.

4

Biocare has also brought counterclaims against Harvard and AsymmetRx, including a counterclaim for a declaratory judgment of non-infringement, which asks the Court to declare that "Biocare has a valid and enforceable non-exclusive, and non-limited license, to the biological material covered by the patents." Counterclaim ¶ 27. Just as the determination of Harvard and AsymmetRx's claims against Biocare turns on interpretation of the Biocare License Agreement, so does determination of Biocare's counterclaims. Accordingly, all of the disputes between the parties boil down to the key issue of whether the Biocare License Agreement is a patent license that permits Biocare to sell p63 antibodies in the commercial diagnostic field, and cannot be resolved without interpretation of the Biocare License Agreement.

AsymmetRx and Harvard are also parties to a license agreement which grants AsymmetRx an exclusive license to the p63 patents (the "AsymmetRx License Agreement"). Biocare's defense that its sale of p63 antibodies in the commercial diagnostic market is permitted by its license agreement is essentially an argument that the Biocare License Agreement affects the scope of AsymmetRx's exclusive license. Accordingly, an arbitrator will need to consider the AsymmetRx License Agreement and the Biocare License Agreement together in order to resolve this dispute. The AsymmetRx License Agreement contains an arbitration provision, and AsymmetRx has agreed to the arbitration of this dispute and to a stay of this case pending resolution of the arbitration proceedings. Biocare, however, has refused to consent to arbitration, despite the clear and unambiguous arbitration provision in the Biocare License Agreement. Because this dispute falls squarely within the scope of that provision, Biocare must also be compelled to arbitration. Harvard has prepared a Demand for Arbitration against both AsymmetRx and Biocare, in accordance with the AsymmetRx License Agreement and the Biocare License Agreement, and is prepared to file this demand with the American Arbitration

Association upon this Court's Order compelling the parties to submit to a three-party arbitration. *See* Proposed Arbitration Demand, attached hereto as Exhibit B.

Furthermore, arbitration should be compelled because Harvard has brought this motion in a timely manner. Even before this Court ordered Harvard to be joined as a party, Harvard had notified the Court (and Biocare) of its intent to seek arbitration if it were to be joined. The Court granted AsymmetRx's motion to add Harvard on October 19, and the Amended Complaint was filed the next day. Biocare filed its Answer and Counterclaim on November 10, raising the Biocare License Agreement as an affirmative defense and bringing counterclaims which are based on interpretation of the License Agreement. Counsel for Harvard conferred with counsel for Biocare on November 11, and was advised on November 17 that Biocare did not assent to the motion. Upon learning that Biocare did not assent, Harvard has promptly moved to compel arbitration.

## CONCLUSION

For the foregoing reasons, Harvard respectfully requests that this Court issue an Order staying the above-captioned proceedings, and compelling the parties to submit to a three-party arbitration.

<div style="margin-left: 40%;">

Respectfully submitted,

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

By its Attorneys,

 /s/    Daryl L. Wiesen
Daryl L. Wiesen (BBO# 634827)
Yvonne W. Chan (BBO# 669223)
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
Telephone: 617.570.1000
Facsimile: 617.570.1231
dwiesen@goodwinprocter.com

</div>

Dated: November 18, 2010

**CERTIFICATE OF SERVICE**

I, Daryl L. Wiesen, hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 18, 2010.

<div style="margin-left: 40%;">

 /s/    Daryl L. Wiesen
Daryl L. Wiesen

</div>

7