UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————

| | |
|---|---|
| ASYMMETRX, INC. and<br>PRESIDENT AND FELLOWS OF<br>HARVARD COLLEGE,<br><br>Plaintiffs,<br><br>v.<br><br>BIOCARE MEDICAL LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO: 07-11189-RGS

———————————————————

## MEMORANDUM OF BIOCARE MEDICAL LLC IN OPPOSITION TO HARVARD'S PARTIALLY ASSENTED-TO MOTION TO STAY AND COMPEL ARBITRATION

Defendant, Biocare Medical LLC ("Biocare"), hereby opposes the Motion to Compel Arbitration brought by the President and Fellows of Harvard College ("Harvard").

### Introduction and Overview of Harvard's Motion

This Court is fully familiar with the facts and stage of proceedings.  Harvard's position is that the dispute between the parties is subject to the arbitration provision contained in the Biological Materials License Agreement between Harvard and Biocare (the "Biocare License").  Harvard calls the arbitration provision "mandatory" and states that the outcome to this case will turn on the interpretation of certain provisions of the Biocare License.  Harvard states that it (and AsymmetRx) "anticipate" an argument that the Biocare License was not a patent license permitting Biocare to sell p63 in the commercial diagnostic field.  Harvard goes on to refer to this Court's Memorandum and Order on Cross-Motions for Summary Judgment, dated September 29, 2008, for the proposition that this Court devoted most of its attention to the interpretation of the Biocare License as between Biocare and Harvard and, therefore, not enough

to whether the license granted Biocare rights to the after-acquired patents.  Harvard - - without

ever initiating a dispute of its own or ever even committing itself to an argument, now appears to

be taking issue with this Court's ruling "that Biocare has satisfied its burden of demonstrating an

entitlement to an implied license under the [ ] patents."  (See footnote 15 to Memorandum and

Order on Cross-Motions for Summary Judgment).[1]

### The Arbitration Provision – Harvard's Failure to Initiate Within a Reasonable Time

Section 7.11 of the Biocare License contains the subject Arbitration clause.  It reads:

> In the event of any controversy or claim arising out of or relating to any provision of this Agreement or the breach thereof, the PARTIES shall try to settle such conflicts amicably between themselves.  Subject to the limitation stated in the final sentence of this Section, any such conflict which the PARTIES are unable to resolve shall be settled through arbitration conducted in accordance with the rules of the American Arbitration Association.  The demand for arbitration shall be filed within a reasonable time after the controversy or claim has arisen, and in no event after the date upon which institution of legal proceedings based on such controversy or claim would be barred by the applicable statute of limitation.  Such arbitration shall be held in Boston, Massachusetts.  The award through arbitration shall be final and binding.  Either PARTY may enter any such award in a court having jurisdiction or may make application to such court for judicial acceptance of the award and an order of enforcement, as the case may be.  Notwithstanding the foregoing, either PARTY may, without recourse to arbitration, assert against the other PARTY a third-party claim or cross-claim in any action brought by a third party, to which the subject matter of this Agreement may be relevant.

It is indisputable that Harvard has not initiated its "demand" for arbitration "within a

reasonable time after the controversy or claim" arose; indeed, far from it.  AsymmetRx's

complaints to Harvard about the Harvard-Biocare License were first brought to Harvard's

attention by AsymmetRx over seven (7) years ago; that fact is well-documented.  That passage of

---

[1] Biocare notes that not even in the newly-filed Amended Complaint has Harvard directly asserted an actionable fact, a breach of the Biocare License Agreement, or any other independent claim for patent infringement.  It is essentially the same Complaint filed by AsymmetRx in June, 2007.

time is violative of any applicable statute of limitations, whether sounding in tort or in contract, and therefore Harvard's demand for arbitration is time-barred.  The arbitration clause provides that "in no event [shall the demand be made] after the date upon which institution of legal proceedings based on such controversy or claim would be barred by the applicable statute of limitation".

The essence of arbitration is to arrive at a quick and final decision, such that the parties can avoid the inherent cost and delays associated with litigation.  Parties are to file a demand for arbitration within "a reasonable time" so that they do not double-deal and use it as a strategy, as here.  In this case, Harvard has sat idly by for over seven (7) years while it has accepted royalty payments from Biocare on sales of p63, without objection.  While Biocare has absorbed untold legal expense and business carrying costs, Harvard has quietly observed one outcome after another.  Biocare has already suffered prejudice due to Harvard's acquiescence, and now Harvard has waived its right to demand arbitration.

## Harvard's Timeline of Delay

On September 22, 2003, nearly one year following execution of the Biocare License, the inventors of p63 and founders of AsymmetRx wrote a letter to Prem Das, the Director of the Office of Technology Licensing for Harvard Medical School, complaining of Dr. Henry Oettinger's involvement and lobbying for his removal from any further negotiations of a licensing agreement between Harvard and AsymmetRx (the "Das letter").  Chief among their complaints was their disagreement over his management of the intellectual property – the p63; his negotiation of the Biocare License; and, his proposed offer to sell licenses to an additional eighteen (18) vendors.  It was following this Complaint that Dr. Oettinger attempted to persuade

Biocare to execute an amendment to the Biocare License.  At least as of <u>September 22, 2003</u>, over seven (7) years ago, Harvard was on notice of AsymmetRx's dispute.

Next, over 4½ years ago, at a meeting on <u>March 29, 2006</u> at the law offices of Goodwin Proctor LLP, Harvard met with AsymmetRx to develop a strategy to defeat Biocare's interests under its License Agreement.  Specifically, they met to discuss and devise ways to find Biocare to be in breach of their license in ways other than selling the antibody outside the AsymmetRx-disputed field (e.g., insurance obligations or through an audit).  Over one year later, on <u>June 27, 2007</u>, AsymmetRx filed its lawsuit.  For 3½ years, from the Das letter through the filing of the AsymmetRx Complaint, AsymmetRx pushed Harvard to terminate the Biocare License and Harvard, for its part, reacted by quietly agreeing to various schemes.

On <u>March 17, 2008</u>, Biocare's counsel wrote a letter to Isaac T. Kohlberg, Senior Associate Provost and Chief Technology Development Officer at Harvard looking to invoke Sections 7.4(a) and (b), the so-called cooperation clauses within the Biocare License from which Biocare sought to review its own license file maintained by Harvard.  (See Exhibit "A" counsel letter.)  Not until <u>August 18, 2010</u>, did Harvard ever mention or even refer to the Arbitration clause - - over three (3) years after the lawsuit was filed and 2½ years following Biocare's letter to Mr. Kohlberg at Harvard.  Even so, the mention of arbitration was not through the filing of a demand but by a voicemail from Harvard's counsel, wherein he states Harvard's decision to arbitrate was arrived at after discussion between Harvard and AsymmetRx; AsymmetRx not even being a party to the Biocare License.  (See Exhibit "B" hereto – Biocare's response to voicemail.)  In sum, it has taken Harvard over seven (7) years to arrive at the decision to seek arbitration, during which time it has never terminated the Biocare License; never declared

Biocare to be in breach; and never alleged Biocare to be infringing the very patents which are the subject of this case.

## Argument

Biocare believes that Harvard's delay, alone, is dispositive of its Motion to Compel. Moreover, given Harvard's undeniable alliance with AsymmetRx throughout, and the fact that it has closely monitored the AsymmetRx-Biocare litigation from point of filing, Harvard's participation to date is not unlike that of a silent litigant.  Harvard has had the benefit of the discovery, the arguments, the decisions and opinions, while giving up precious little of its own. In *Davis v. Continental Airlines, the California Court of Appeals for the Second District held* that the defendants had waived their right to arbitrate when they delayed their motion to compel arbitration until after they had engaged in extensive discovery. 59 Cal. App. 4th 205 (1997).  The court indicated that a waiver may be found when a party seeking arbitration "has (1) previously taken steps inconsistent with an intent to invoke arbitration, (2) unreasonably delayed in seeking arbitration, or (3) acted in bad faith or with willful misconduct."  *Id.* At 212.  The court concluded that a party waives its right to arbitrate when it uses discovery in judicial proceedings to learn what a defendant's likely strategy will be in arbitration: "[S]uch procedural gamesmanship provides ample support for the trial judge's conclusion that plaintiffs filed their action in bad faith, and by doing so waived their right to arbitrate", stating further that "[t]he courtroom may not be used as convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration."  *Id.*  In reaching its determination, the *Davis* court emphasized that Continental did nothing for six months to compel arbitration.  *Id.*

**<u>Conclusion</u>**

For all of the foregoing reasons, Biocare requests that this Court deny Harvard's Motion

to Stay and to Compel Arbitration.

**BIOCARE MEDICAL LLC,**

By its Attorneys,

Dated:  December 2, 2010

/s/ *Douglas B. Otto*
Douglas B. Otto (BBO# 555269)
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Tel: (617) 737-8873
Fax: (617) 342-4970
dotto@morrisonmahoney.com

1278771v1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASYMMETRX, INC. and<br>PRESIDENT AND FELLOWS OF<br>HARVARD COLLEGE,<br><br>Plaintiffs,<br><br>v.<br><br>BIOCARE MEDICAL LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO: 07-11189-RGS |

## CERTIFICATE OF SERVICE

The undersigned understands that the following counsel of record are registered on the Court's CM/ECF database.  As a result, these individuals (1) will receive from the Court electronic notification of the filing of the <u>Memorandum of Biocare Medical LLC in Opposition to Harvard's Partially Assented-to Motion to Stay and Compel Arbitration</u>, filed via ECF on December 2, 2010; (2) have access to this document through the Court's website; and (3) will not receive paper copies of the foregoing from the undersigned upon filing.

| | |
|---|---|
| Steven M Bauer<br>Amy Crafts<br>Jamie Crystal-Lowry<br>PROSKAUER ROSE LLP<br>One International Place<br>Boston, MA  02110 | Daryl L. Wiesen<br>GOODWIN PROCTOR LLP<br>53 State Street<br>Boston, MA 02109 |

/s/ *Douglas B. Otto*
Douglas B. Otto

1278771v1